LAPLANTE<br>v.<br>BRIANT.

2. Was the consideration of the note for the household expenses of defendants, the education of their children, or the separate estate of the wife. C. C. 2409.

The account is in evidence for which the note was given; and is made out in the name of *P. P. Briant*, and not in that of his wife. It consists of several items, amounting in all to $504 05.

The consideration of the following items is not shown, to wit : 4 notes, total amount $768 20 ; account of *Madam Lassaline Briant*, $115 30 ; *Sabatier*, $53 50 ; *Hardy*, $5 00.

It is alleged, that the account of *Madam Briant* was assumed by the wife of *P. P. Briant*, in the settlement before mentioned ; but we can find no assumption of it therein.

The preceding items cannot be allowed, as it is not shown they are debts created personally by the wife, or for the household expenses of defendants, the education of their children, or the separate estate of the wife.

The goods purchased at the store of plaintiff, for $162 05, must be paid by the wife.

The bill of these, which is one of the items in the general account, is for such articles as are usually purchased for the use of families. It is also established, *Mrs. P. P. Briant* was in the habit of purchasing goods at the store of plaintiff, about the time this store account commenced, and that she had an open account therein at that epoch, and that her husband is insolvent.

If she had an account different from this, it was her duty to have proved it.

It is, therefore, ordered, adjudged and decreed, that the judgment be avoided and reversed ; it is further ordered and decreed, that plaintiff recover of defendant, *Clara Fuselier*, wife of *P. P. Briant*, and separated in property from him, one hundred and sixty-two dollars and five cents ($162 05) with eight per cent. interest thereon from the first of April, 1856, till paid, and the costs of the lower court; it is further decreed, that plaintiff pay the costs of appeal, and that the rights of plaintiff, if any he may have, be reserved against the defendant, *P. P. Briant*.

---

### EDMOND LAPAROUSE *v.* LORENZO C. RICE.

The 32d section of the Act of 1806, called the Black Code, justifies the firing upon runaway slaves who are armed, or who, when pursued, refuse to surrender, avoiding, however, if possible, the killing of them.

If, however, the slave be killed, the homicide is a consequence of the permission to fire upon him, and the party killing him cannot be held liable for the value of the slave killed.

APPEAL from the District Court of the Parish of Vermillion, *Voorhies*, J. *DeBlanc & Fuselier*, for plaintiff and appellant. *C. H. & E. C. Mouton*, and *D. O'Bryan*, for defendant.

COLE J. This suit is instituted to recover the value of the slave " *Plant*," the property of plaintiff, on the ground that he was illegally killed by defendant.

The judgment was for defendant, and plaintiff has appealed.

The Act of 1855, relative to slaves and free colored persons, having been declared unconstitutional ; and the Act of 1857, relative to slaves, not having been in force at the time of the killing of the slave, the decision of this cause must de-

pend upon the effect of the Act of 1806. Session Acts, p. 150 ; Bullard & Curry's Digest; p. 49.

The 32d section of said Act provides, that "If any slave shall be found absent from the house or dwelling, or where his usual place of working or residence is, without some white person accompanying him, and shall refuse to submit himself to the examination of any freeholder, the said freeholder shall be permitted to seize and correct the said slave as aforesaid ; and if the said slave should resist, or attempt to make his escape, the said inhabitant is hereby authorised to make use of arms, but at all events avoiding the killing of said slave, but should the said slave assault and strike the said inhabitant, he is lawfully authorized to kill him."

This section is substantially the same as the 65th section of the said Act of 1855. Session Acts, 386.

The 35th section of the Act of 1806 declares, that " It shall and may be lawful to fire upon runaway negroes, who may be armed, and upon those who, when pursued, shall refuse to surrender."

This section does not differ materially from the 41st section of the Act of 1857, relative to slaves. Session Acts, 233.

It is established, that the deceased slave was in the habit of running away. In the act of sale to the plaintiff, it is stated he had run away several times. He was sold with full guaranty, except the vice of running away.

It is admitted that plaintiff lives about 45 or 50 miles distant from the place where the slave was shot.

The testimony shows, that defendant is a planter and slave-holder, and lives in the neighborhood where the slave was killed.

It appears that defendant and one *Merriman* were hunting for some runaway negroes.

*Merriman* testifies thus : " When we came across this boy he was in a thick palmetto swamp—he had a camp ; there was a large quantity of provisions there. He ran, but picked up a belt, before running, to which was attached a scabbard. I ordered him to stop three times, and hollowed as loud as I could ; I was not more than twenty or twenty-five steps from him. So did defendant order him to stop. We were both afoot and had no dogs. If he had gone ten feet further he would have been out of sight. He was shot in the butt."

The left arm of the slave was also struck by the discharge of the gun, and broken.

The defendant is, under the circumstances, justified by the law.

The object of the law is not that runaway negroes, who are armed, or who, when pursued, shall refuse to surrender, shall be killed. It · authorises the firing upon them, avoiding, however, if possible, to kill them.

Unless there are particular reasons why a runaway slave attempting to escape, should be at once wounded, the policy of the law, humanity, and a just regard to the interests of slave-holders require that the gun should not be aimed at him ; but that it should be discharged for the purpose of inducing him to stop.

When this is ineffectual, and it becomes necessary to fire upon him to prevent his escape, then the pursuer ought not to try to give him a mortal wound, but merely to cripple him, so as to arrest his flight.

If, however, the slave be killed, the homicide is a consequence of the permission to fire upon him. *Duperrier* v. *Dautrive*, 12 An. 665.

Judgment affirmed, with costs of appeal.